Case No. 23-6363. Good morning. Good morning. May it please the Court, my name is Scott Filetta of the Neighborhood Defender Service of Harlem, and along with my co-counsel Jill Applegate, I represent the petitioner in this action. And you'll both be arguing, is that correct? Yes, that's correct. I will be addressing the eligibility for non-discretionary relief issue. My colleague will address the equitable tolling and sua sponte issues, and we request a respectfully one-minute referral rebuttal. The fundamental question in this case is when a consequence as severe as deportation is discovered to have been founded in legal error, is there a remedy? The petitioner, Mr. Pinilla, lived in the United States as a lawful permanent resident for over two decades until his deportation, which tore apart his family with devastating consequences. And it is now uncontested that the criminal convictions underlying his deportation no longer render him deportable. The Board's denial of his motion was unlawful and should be vacated by this Court for three reasons. First, since Mr. Pinilla is no longer deportable and is eligible for non-discretionary release, the Board erred in denying Mr. Pinilla's motion to reopen based on his criminal history. Second, the Board erred by failing to grant equitable tolling despite the fact that Mr. Pinilla diligently filed his motions approximately three months after becoming aware of his eligibility to do so. And third, the Board erred in denying sua sponte reopening. Moving to my first point, the Board in this case erred in denying Mr. Pinilla's motion to reopen based on his criminal record. The Board's conclusion that Mr. Pinilla remains deportable is untenable after this Court's decision in United States v. Minter. And so the only component of this determination that the Respondent defends on appeal is that the agency had the discretion to deny his motion based solely on a bare, unexplained conclusion that he has a, quote, significant criminal history. But this is not a lawful basis for denial for two reasons. First, the agency didn't state any authority for which it could deny on this basis any standard for which this was a factor, a bare conclusion of a significant  Now it seems to rely on a particular regulatory provision, yeah? Well, the agency itself did not cite a regulatory provision, and so this Court should decline the invitation of the Respondent to engage in post hoc argumentation. And even if the agency had cited that regulation, the — that regulation preceded the codification of the statutory motion to reopen — the statutory right to a motion to reopen. And the Supreme Court said in Kucana v. Holder that that regulation does not preclude judicial review and does not make motions to reopen discretion solely discretionary. And the agency did not state in CFR 1003.2a. That's correct, Your Honor. And in a very similar case, Singh v. Rosen, where the agency had claimed it was denying a motion to reopen, and there actually said it was a — they were trying to exercise their discretion. The — this Court found that the agency had not explained what was the basis for that discretion that it was relying on. The Respondent tried to offer the same regulation, and this Court rejected that since it was not clear that that's what the Respondent actually relied upon. And even if the — even if the agency had claimed the discretion, the Court in Singh v. Rosen also cast doubt on the idea that in a statutory motion to reopen, the agency can deny a — a motion to reopen where the underlying relief is nondiscretionary. Mr. Pina is eligible for nondiscretionary relief, termination of removal proceedings, since he is not deportable. He does not rely on a finding of discretion. He's no longer has — he no longer has an aggravated felony conviction. That's correct. He no longer has any deportable convictions. And therefore, he's eligible for termination of proceedings that is mandatory relief. It's actually a very rare circumstance that somebody would be eligible for mandatory relief. And so under this Court's decision in Singh v. Rosen, the — the Court should find that the agency hasn't adequately explained its determination that it has discretion to deny his motion to reopen, particularly as he is eligible for mandatory relief. And if there are no further questions on this issue, I will pass it to my colleague to address equitable tolling. Good morning, Your Honors. May it please the Court. My name is Jill Applegate, also co-counsel for the Petitioner. As to our second point, the Board committed two errors when it determined that Mr. Pina did not exercise due diligence in the filing of his motion. First, the Board erroneously determined that Mr. Pina did not act diligently when filing his first motion based on the automatic vacators of his convictions under New York's Marijuana Regulation and Taxation Act, or MRTA. In Wang v. the BIA, this Court articulated the legal standard for establishing when a Petitioner has demonstrated due diligence, and they stated it's a two-step analysis. First, the Court must analyze when the circumstance warranting reopening was or should have been discovered by a reasonable person in that situation, and second, whether the individual then exercised diligence in filing their motion after discovering that circumstance. The Court emphasized that this is an individualized assessment based on the filer's circumstances, and specifically stated that there is no magic period of time that can be considered per se unreasonable. However, the Board employed exactly this type of per se rule when it determined that Mr. Pina did not exercise diligence solely based on the amount of time that passed between the issuance of the automatic vacators. What do you want? In other words, what's the rule? What is the analysis? What is it that you want? We would request that this Court remand to the Board to engage in an adequate analysis of the facts in this case, because the Board's bare conclusion here that the amount of time that passed was unreasonable isn't based in the facts. There are sufficient facts in the record for the Board to find that he was, in fact, reasonable in discovering the MRTA when he did, and that following the passage of the MRTA, he exercised diligence in filing his motion. And so we would request that this Court remand and request that the Board engage in an adequate analysis of the facts, which it failed to do here. What is an adequate analysis? An adequate analysis — What are the factors? The Court has only stated that the diligence standard is assessing when a reasonable person under the circumstances should have been aware of the change in law and whether they exercised diligence following that change. And, in fact, the only sort of rule that this Court has placed on that analysis is that simply stating the amount of time without more is not sufficient analysis. And it requires that the Board engage in some level of factual analysis if there are facts in the record to support the finding. And here there are, in fact. So all you want from us is to say you haven't said enough. Thank you very much. Go back and say enough. Well, certainly we would prefer that this Court assess the facts and determine that the Board's decision was, in fact, erroneous and that Mr. Pena has demonstrated diligence in this circumstance. But in the event that the Court is not willing to do that, we would, yes, request remand and request that the Board —  So maybe let's take the first part first. Okay. What would we say in order to determine that he has, in fact, exercised reasonable diligence in a way that makes sense for us and for the BIA? Yes, Your Honor. The undisputed facts in the record show that Mr. Pena was pro se and detained throughout the entirety of his removal proceedings, that after he received his removal order, he exercised every avenue to relief that he reasonably believed was available to him to challenge the validity of that removal order. He filed an appeal to the Board. He filed petitions for review with this Court. He filed a motion to reconsider, a motion to reopen. Each of these was denied in turn, and Mr. Pena reasonably believed that he had exercised every legal pathway that was available to him to challenge the validity of his removal order. And, in fact, he willingly remained detained for nine months following the entry of his removal order because he was so desperate to challenge the validity of his removal order and remain with his family. And then the facts also show that once he was deported, he began making under $30 a day, has had very little resources, is using all of his resources simply trying to survive, has not had access to stable Internet, that his family was thrust into destitution. His partner and son were placed under legal guardianship for their mental and physical disabilities, and his 14-year-old daughter had to take over caretaking for the entire family and had to manage the family's food stamps that they went on because the sole breadwinner of the family had been deported. And so it's reasonable that — So in Watson v. United States, we said that equitable tolling cannot be premised on Mr. Watson's lack of education, pro se status, or ignorance of the right to bring a claim, period. Help me address that. Yes, Your Honor. In this analysis, the court — the standard is when a reasonable person under the circumstances would have discovered the change. And, in fact, in Zao v. INS, the — which was an ineffective assistance of counsel case, the court found that the ineffective assistance of counsel became discoverable when prior counsel failed to reinstate the individual's appeal. But the petitioner in that case was not immediately aware of prior counsel's failure to reinstate the appeal and determined that, you know, perhaps by inquiring with the clerk of court, the petitioner could have discovered this error, but they didn't hold him to that standard because they said, we're looking at when a reasonable person under these circumstances would have discovered the error. And that same analysis applies here, where an error is found to have occurred. The court specifically stated that due diligence does not require immediate discovery. It simply requires that the individual discover the error within a reasonable amount of time under their specific circumstances. So presuming that, sadly, many, if not most, or the vast majority of people removed are not, you know, well off, right? Mm-hmm. And they're not highly resourced. They don't have counsel. And many of them had marijuana convictions that have been vacated, not just in New York, probably in other parts of the country. Mm-hmm. What makes him different, or are all of those people going to be eligible to reopen at any point when they discover? And, in fact, here what's interesting is it wasn't his actions that brought this to his own attention. It was a letter from a lawyer, which came too late for him at this point. But who would not be eligible for this? Is this not pretty much everybody can move to reopen at any time? Is that not the rule you're looking for? Not necessarily, Your Honor. I'll first just note that the framework for this analysis is that under Kukana and Dada, the Supreme Court stated that the motion to reopen is an important safeguard to ensure a proper and lawful disposition of proceedings. So the motion to reopen is indeed intended to be an error correction mechanism. And so in terms of sort of a floodgates or a lack of finality argument, that is cabined by the requirements under the statute, that the new information that's being presented in the motion be new, previously unavailable, and material. But everyone agrees that vacation, a vacate tour of your marijuana convictions meets those standards, right? Right. And so then that's where the equitable tolling analysis comes into play, because the individual has to demonstrate diligence during the entire period they seek to toll. And the Court has said that under that analysis, we look at when a reasonable person in that situation would have discovered the error underlying their proceedings, and whether they then acted with diligence at that point to. So the record here shows that your client had daily contact with family in New York, and that his family in New York were aware that his convictions involve marijuana. Correct. If anything, he seems slightly better positioned than some removed parties. He still has day-to-day contact with New York. And I know I was in the criminal justice system and in the legal system, so I'm more aware of the marijuana laws changing. But most people are aware. But if anything, he seems to be better positioned, as I say. And I'm trying to figure out how it is that everybody whose marijuana convictions were vacated is not eligible for this relief under your position. If the marijuana conviction, if the marijuana vacator undermines a removability ground, then they have the right under the statute to file a motion to reopen. No matter when they figure it out. But that's the issue, is that it's not no matter when they figure it out. They have to figure it out within a reasonable period of time under the circumstances. And he became the change occurred, and he discovered the change within about a year and a half. And the moment he discovered that change, he acted quickly to vindicate his  rights. He did not sleep on his rights. And to your point about his family being in New York and that he was in contact with them every day, there are undisputed facts in the record that show that his family was not in a position to be discovering this nuanced change in New York criminal procedure law, to be following the session laws of the New York State legislature, or that anyone in the family had a high enough level of education to know that that nuanced change in New York criminal procedure law would ultimately impact his case. And I briefly want to just point to, you know, this Court has not had the opportunity to analyze a case like this, I think probably because it is a relatively extraordinary circumstance that someone's entire removal order is undermined within a four-year period. But other circuits have addressed an issue like this. So the Fourth Circuit —  Yes, exactly. The Fourth Circuit in Williams v. Garland, and even the Fifth Circuit in Lugo-Resendez v. Lynch, have addressed instances where there was a change in law that rendered a petitioner newly eligible to file a motion to reopen. And in those instances, the courts found that the petitioners exercised due diligence when they discovered the change in law within around the same amount of time as Mr. Pena here. And I'll just note that in those cases, the change in law was a Supreme Court case that was likely to be widely reported on around the country. This was a relatively nuanced change in New York's criminal procedure law. And further, in both of those cases, the petitioners were not advised about the change in law because of their own affirmative actions and — So they're both using a totality of circumstances test, generally speaking. Yes. Sorry? They are — both the Fourth Circuit and the Fifth Circuit — Yes. — are on the Chival line, I think. They are — they propose a totality of the circumstances test and say, well, you should look at the English language skills. You should look at the educational level and so on. Is that right? Yes. That's correct, Your Honor. And that — yes. And then we have said, admittedly, in another context involving ineffective assistance of counsel, that equitable tolling should not be premised on someone's education level and so on. Yes, Your Honor. But that's not the only fact that demonstrates that Mr. Pania exercised reasonable diligence under the circumstances here. And I'll just note that in the Fourth Circuit's analysis, they stated that finally obtaining good legal advice does not mean that the petitioner was dilatory for failing to obtain such advice earlier. And again, similarly here in this circuit, the Court has stated in Dow v. INS that due diligence does not require immediate discovery. We'll take some time for rebuttal. We'll hear from the government. Mr. George. Thank you. Thank you. May it please the Court, Matthew George for the Attorney General. The Board here acted within its discretion in denying the motions to reopen in this case for two different reasons. First, it made a discretionary determination that petitioners' significant criminal history as well as the successive motions to reopen that were untimely both weighed in favor of denying the motion to reopen. In Kukana, the Supreme Court said that even though motions to reopen are now statutory, they are codified, that the standard remains discretionary, and that standard is in So regardless of the meritoriousness of the underlying claim here of sort of the vacatur of the criminal convictions and all of that, there's no exception to the timeliness requirement for motions to reopen. The BIA itself did not cite to the CFR 1003. Is that correct? It did not, no. But it did, in that separate paragraph, state basically for these reasons, it doesn't merit reopening. It said the significant criminal history, and there's no dispute that Petitioner has, outside of the convictions that were vacated, a pretty significant criminal history and a number of different convictions and crimes throughout his time in the United States. It's undisputed also that he filed a motion. Excuse me. BIA didn't give us the benefit of his thinking. I presume that one of them was the controlled substance, the attempted sale of a controlled substance that later no longer falls within the ambit of the aggravated felony following MNTER. Right. Regardless of whether that's an aggravated felony or not, it's still a conviction that he has. He also has a number of convictions for unlicensed operation of a vehicle, aggravated unlicensed operation of a vehicle. Those are misdemeanors in New York, yeah. I'm sorry, could you repeat that, Your Honor? Those are misdemeanors in New York. Right. Those are misdemeanors in New York. You can't go to jail for more than a year in New York for that. Go ahead. But convictions are convictions. The board wasn't parsing out whether these are felonies or misdemeanors. Well, you said he had a significant criminal history, and I'm trying to understand what it is you're referring to. As the board pointed out. Let me ask you a question. After MNTER, could the controlled substance, the attempted sale of controlled substance, be a basis for an order of removal? I don't have an opinion on that, Your Honor, because the board didn't address that. You don't have an opinion on it? Wait a second. You represent oil. You represent the PA. You're telling me you don't know whether it could or could not form a basis pursuant to the statute as to whether it could be removed for that? In a removal today? Excuse me. Let me make it plainer. It's no longer an aggravated felony, according to MNTER. Can it be removed for something that's not an aggravated felony? If he were here in the United States and in proceedings right now, no. All right. On his current criminal record, he no longer has convictions for the marijuana, and he no longer has a conviction that qualifies as an aggravated felony under  Is it any longer removable if he were still here? If he were still here, probably not. But the fact is he's not here. Wait a second. So after MNTER, MNTER actually sets the stage in the context that he's no longer removable. Doesn't it make sense that his application ought to be evaluated with regard to that in that context? In what respect? The board essentially did. Well, we don't know what the board did because they didn't tell us. They just said that he had a, quote, significant criminal past. Don't you think the board ought to be a little bit more specific so we'd know what they were talking about? We're entitled to know the grounds upon which they exercised their discretion, aren't we? Yes, and it stated that. They did? It stated that's why it's denying the motion, because he has a significant criminal history and because this is his second untimely motion to reopen. I think the question is, do we look at that prospectively or retroactively? In other words, when it says that he has a significant criminal history, let's just say hypothetically, that someone was convicted of murder. And then the Innocence Project gets involved and shows that, in fact, he was not guilty of that murder and his conviction is expunged. Does the BIA, can the BIA look back and say at the time he had a significant criminal history and was convicted of murder and use that as the basis? It's looking prospectively, Your Honor. It said it's not looking at the marijuana convictions. It's assuming that those were vacated. But regardless of whether the cocaine conviction is an aggravated felony or not, it's still a conviction. That one was not vacated. So the question of whether we would, if he were starting from scratch and he just made an application to come to the United States, which, you know, you shouldn't have to do that, it sounds like, right? Because we're all agreeing that he wasn't removable, but he got removed. Or he's not removable, but he got removed. So now we're asking to meet the higher standard of can I come in rather than the standard of can I stay here. Well, I mean, that's the whole point. His removal order was valid at the time. He was validly removed. So now we're in this situation, sort of drawing parallels, I think, to the first case that the Court heard about finality, about at what point is this process over? I mean, is it 20 or 30 years later? Does he discover, does he get the phone call from counsel that, hey, maybe those convictions we can get around those now? Is that now appropriate of, like, 30 years later? He can say, hey, I'm not removable now. I've been in Panama for 30 years. So you agree with Ms. Hutchison in the first argument. So let me ask you a question. What is the government's position with respect to whether a change in law can constitute an extraordinary circumstance meriting tolling? I'd say, just as a caveat, that's not an issue in this case because the Board only addressed the diligence portion. But in terms of whether that can be an extraordinary circumstance, our position is that it's not. And sort of in the companion case, that issue was really put forward. That Petitioner also has before this Court that's not being heard today, but that is pending before the Court. Right. And was that argued already, or that's just a- No. It's a companion case. It's coming. Okay. The reply brief was just filed about 10 days ago. But in that case, you know, we took our position is that a change in law would not be an extraordinary circumstance. And we sort of analogized that to Rule 60b-6 motions where many different courts, this one, the Supreme Court, other circuit courts have said a change in law is not an extraordinary circumstance because laws change all the time. That's the reality. And things change. Circumstances are different. Like here, maybe Petitioner, if he were in the United States and being put in proceedings for the very first time, these convictions would not make him removable. Most likely. I'm not stating that for sure. But that is likely the case. However, that's not the facts that we have in this case. In Judge Lohier's hypothetical removed person who was exonerated, that's different. In the criminal context, yes. Right, right. Here we're talking about a change in the law that reclassifies someone's past conduct. Right. And in sort of the immigration context, Padilla would be an example of that, where not being informed of immigration consequences can be a constitutional infirmity in a prior conviction that could lead to redress. Has the BIA previously, and I understand you don't think that this is the issue, central issue, I might agree, but has the BIA previously acknowledged that a change in law can merit or be an extraordinary circumstance meriting tolling? I believe Petitioner has cited some unpublished cases where I haven't read those myself. I don't know for sure. We also don't know the exact factual scenario there. It's certainly possible. I mean, even the courts have said it's never or impossible. I think, as Your Honor pointed out in an earlier case, too, really difficult doesn't mean impossible. I'm glad you're listening in, Mr. George. Okay. The same principle would apply. Just because it's super difficult, the board can do whatever it chooses to do. It does have discretion in these motions to reopen to do that. It's never said that in a published decision. It's never announced a rule, and there's no rule or regulation or law or statute or anything like that that requires it to reopen in this type of case. That's the whole point. There's no exception for I'm no longer removable. There's no exception to the timeliness requirement. No, no, no, but in connection with tolling, so we're talking about equitable tolling. Equity is involved here. I agree with that. So part of the analysis would be whether a change in law as a matter of equity might, under certain circumstances, merit tolling. Certainly on the it would be applicable in the extraordinary circumstance part. Whether in the due diligence, I suppose it could be a factor that an equitable adjudicator is looking at, something the board could consider. In this case, I think. So did the board consider that here? And I think that the argument on the other side in part is, well, one argument is that we don't have enough of an explanation. We don't have a consideration that's visible on the page from the BIA of why this change, why he couldn't, why he responded insufficiently without due diligence after this change of law in New York law, after midterm. Well, there I point the Court back to what Petitioner actually presented to the board in his motions. If you look at that specifically, it's around page 62 of the record. Excuse me, that's counsel's statement. It's around pages 35 to 36 and page 286. In his actual motions, he didn't present any of these arguments that he's now presenting to the Court about, well, I didn't have the resources to discover this change or I didn't have the ability to hire an attorney. It was just like, well, I had no reason to do anything. And then, well, by chance, someone called me up one day and said, hey, the law's changed. But is that disputed? I mean, in other words, did the BIA say we don't believe that? Well, no, because it was never presented to them. At some point, someone has to make the argument in the same way someone has to make an argument to this Court. It's not the Court's obligation to sort of comb through the whole record and make up an argument of, well, what do we do with all this evidence you've placed in front of us? How do you want us to consider that? They've never made the argument that he was unable or it was insufficient, that all he had to do was just have this daily contact with his family, as Judge Miriam has pointed out, but never make any inquiries or do anything regarding his immigration case. Essentially, he accepted the fact that he'd been removed and that it was over. And I'll point out, removal should be the ultimate signal that something has gone wrong in your case, that you need to do something if you think that was erroneous. So that he's done nothing, and if you look through all of his evidence, there's nothing pointing out that here's what I've done in any respect until someone in 2021 called him in Panama and said, hey, I might have a way to do something about your immigration proceedings. Do you want to do that? And I'm sure he said, yes, I'd love to do that. You know, he presents several letters about employment and stuff like that from Panama. He doesn't provide any statement from himself about what was he doing or why couldn't he have done more or anything of that nature of, like, what was he doing to show any sort of diligence. We're not saying it is some sort of impossible standard of he should have been constantly calling a lawyer or something like that, but there's no evidence in this case that he did anything to pursue his case until someone called him by chance. So is your suggestion that he failed to exhaust all of these arguments? That's essentially the overall, if you look at what was presented, because now he's making a much different argument than what he presented to the court. However, even looking at the actual evidence, there's no evidence that he exercised any diligence until his phone rang one day by chance. What was he doing? I understand that he was poor, that he didn't have great communication, so on and so forth. But as the court has pointed out, that's reflective of a lot of the individuals. And if that's all he has to show, then it could be every individual with a marijuana conviction just has to say, well, maybe I'll read this court's decision if it ends up saying that, and say, well, now I don't have to do anything. As soon as someone calls me up and says, hey, now the court's issued a decision that says you can do this, you don't have to show any diligence. You just have to file a motion. That can't be the standard for diligence. Unless the court has any other questions, I've gone over my time. We ask the court to deny the petition. Thank you. Your Honors, ultimately, the Board failed to apply this court's test to the diligence analysis, which is Wang v. Board of Immigration Appeals. When the change was or should have been discovered by a reasonable person under the individual's circumstances, and that's that term, circumstances. The government is saying that none of these factors were presented to the agency that you're now raising in connection with trying to show us that the BIA may have, at some level, with respect to its diligence analysis. Well, on page 273 of the record, which is the brief, all these facts were laid out in the motion to reopen. All of these circumstances of Mr. Pena. 273? Yes, 273. And the agency simply did not consider any circumstances whatsoever other than the mere passage of time. It did not make a finding as to when he knew or reasonably should have known of this change. It did not make the Wang v. BIA two-factor test didn't apply at all. And the term circumstances. So 273 is about his family? Yes. All of the facts about the destitution of his family, the fact that they were focusing all of their efforts on putting food on the table, that he wasn't able to find work, that his family was disabled. And there's no fact in the record that suggests at any point in time before he actually learned of the MRTA that he or any other member of his family knew anything about that. The Board doesn't even engage in analysis of when he knew or should have known of the relevant change. And the term circumstances does open up essentially a totality circumstances test, as the Fourth and Fifth Circuit apply. As to the Watson v. United States case, that is a case about what is an extraordinary circumstance, lack of ignorance isn't itself the extraordinary circumstance. The Board here didn't contest that there was an extraordinary circumstance. The change in law was the extraordinary circumstance. The question is — When you say it didn't contest, it didn't say it either way. It didn't say anything either way. Correct. But the inquiry here isn't was there an extraordinary circumstance. It was their reasonable diligence. And that Watson case is about extraordinary circumstances. And ultimately, the Fifth Circuit has held where, as the government concedes an individual is no longer deportable, the equitable rule of equitable tolling should not be applied so strictly as these equitable tools are meant to free the court from the evils of archaic rigidity, such as would happen when somebody who's not deportable is not able to present that case. And based on those arguments, we respectfully request that the motion be reversed. Thank you very much. Thank you, Your Honor. Judge Wesley, I'll say it. No, I'm good. We'll reserve the decision.